UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------X
DAVID SMITH and
KIMBERLY SMITH,              :

       Plaintiffs,           :       3: 03 CV 0143 (AWT)

- against -                  :

PAUL DAVID WOOSLEY,          :       February 7, 2006

       Defendant.             :
-----------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
MOTION FOR CIVIL CONTEMPT ORDER
AND APPOINTMENT OF CRIMINAL PROSECUTOR
<u>PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 42</u>**

Plaintiffs, DAVID SMITH and KIMBERLY SMITH, move for an order holding the Defendant, Paul David Woosley, in civil contempt and criminal contempt, pursuant to Federal Rule of Criminal Procedure 42, for his willful violation of the Permanent Injunction Order dated February 28, 2003, as amended by the United States Court of Appeals for the Second Circuit by decision dated March 4, 2003. Plaintiffs also move for sanctions in the form of their attorney's fees incurred in relation to this motion.

**<u>PRELIMINARY STATEMENT</u>**

On February 14, 2005, Paul Woosley ("Woosley") acted in contempt of this Court's Permanent Injunction Order dated February 28, 2003, as amended by the United States Court of Appeals for the Second Circuit by decision dated March 4, 2003 by filing a Petition for a Writ of Habeas Corpus Concerning the Custody of Child in the Connecticut Superior Court, District of Fairfield, without first obtaining leave of the this Court as required under the terms of the

injunction. As part of his petition for habeas corpus, Woosley alleged that Plaintiffs were holding Kyle "illegally" in violation of Woosley's rights.

The specific terms of the Permanent Injunction Order, as modified by the Second Circuit Court of Appeals, stated that Woosley is restrained from litigating the question of whether his parental rights were terminated by the decree of the 225th District Court of Bexar County, Texas dated July 15, 1992 in violation of his due process rights and whether the adoption decree of 225th District of Bexar County, Texas dated March 1, 1993, should be set aside, without first obtaining leave of the Connecticut District Court. *See Permanent Injunction Order issued by the United States District Court of Connecticut on February 28, 2003 and the Decision of the Second Circuit Court of Appeals affirming the Permanent Injunction Order with Modification on March 4, 2005, annexed to the accompanying Declaration of Patrick F. Lennon (hereinafter Lennon Decl.) as Exhibits "1" and "2" respectively.*

Woosley's Petition for Habeas Corpus Concerning the Custody of a Child is a direct challenge to the validity of the Texas Adoption Decree and Texas Decree terminating his parental rights ("Texas Decrees"). The Connecticut Superior Court appropriately denied Woosley's Habeas Petition, but Woosley violated the Injunction once again by seeking an appeal of the dismissal order in the State of Connecticut Appellate Court on August 18, 2005. *Lennon Decl. Exhibit "3."* By his express words Woosley leaves no doubt that he is now again challenging the Texas Decrees. In his Appeal Brief (*Lennon Decl. Exhibit "3"*) Woosley states, among others, the following appellate issues:

- "Whether if a Plaintiff asserts with sufficient particularity in a habeas petition that he is the legal parent of a minor child who is being held by Connecticut residents who are not legal parents . . ."

2

- "Whether, in consideration of a habeas corpus petition concerning custody of a child, where the plaintiff contends he is the legal parent and the respondent is not a legal parent . . ."

- "Whether the federal PKPA, 28 U.S.C. § 1738A, mandating which sister states' custody determinations deserve full faith and credit, applies to termination of parental rights and/or adoption proceedings in Connecticut."

Woosley's express challenge to the Texas Decrees is thus in direct contempt of the Injunction because such a petition could not be granted if he has no legally recognizable relationship with Kyle. Woosley's attempt to again relitigate in another proceeding the validity of the Texas Decrees was a necessary prerequisite to his obtaining any rights under the habeas petition. It was also the basis for the issuance of the Injunction in the first place. Thus, Woosley was absolutely required to obtain leave of this Court before filing such a petition, yet none was applied for or obtained.

The Court did not issue the Injunction lightly. Neither did the Second Circuit Court of Appeals affirm the Injunction Order with modification without ample cause. Woosley has engaged in a campaign of **harassment** against the Plaintiffs, David and Kimberly Smith, and their son Kyle for over **thirteen years**.

The events leading up to Woosley's latest act of contempt for the legal system demonstrate a systematic pattern of harassment, by which he has vexatiously pursued the Smiths in multiple states in both federal and state court. Given the explicit nature of Woosley's violation of this Court's Injunction, a summary of Woosley's history of litigation against the Smiths is unnecessary to find Woosley guilty of contempt. However, a review of the facts has been provided below for the purpose of giving context to the current request for sanctions. From the history of Woosley's abuse of the legal system, it is clear that substantial and meaningful sanctions will be necessary to ensure that he will not again violate the Injunction.

3

## FACTS

Woosley is the biological father of Kyle Smith ("Kyle"), who was born in Pennsylvania on July 8, 1992, and then transported to Texas. Prior to the birth, the biological mother proposed placing the child for adoption. On July 10, 1992, Defendant executed an Affidavit of Waiver of Interest in Child. Thereafter, on July 15, 1992, the Texas District Court for the 225th Judicial District in Bexar County, Texas issued a decree terminating the Plaintiff's parental rights. On March 13, 1993, the same court issued a Decree of Adoption making the Plaintiffs the legal parents of Kyle Edward Smith. Since that time, the Plaintiffs are the only persons with any parent-child relationship with Kyle.

Commencing in May 1993, Woosley declared legal war on the Plaintiffs, the adoption agency and all of the involved courts. Initially, Woosley demanded the Smiths grant him visitation rights with Kyle. Exercising their rightful parental discretion, the Smiths declined.

On July 13, 1993, Woosley filed suit in the Texas District Court for the 225th Judicial District in Bexar County, Texas, seeking to set aside the decree terminating his parental rights and the aforementioned adoption decree. On August 22, 1995, the Texas court granted summary judgment in Plaintiffs' favor, dismissing Woosley's lawsuit.

Thereafter, Woosley appealed. The Court of Appeals of Texas, Fourth District, San Antonio, denied Defendant's appeal on or about April 10, 1996, stating, among other things, "[u]nder these circumstances, we find it inconceivable that appellant would now attempt, when the child is three years old, to take him from the only family he has known." *See Woosley v. Smith*, 925 S.W.2d 84, 88 (1996).

On January 21, 2001, Woosley's petition for review by the Texas Supreme Court was denied and motion for rehearing before the Court of Appeals was also denied on March 28, 2002.

4

In connection with his action to set aside the termination of his parental rights and the adoption decree, Woosley also asserted tort causes of action against, among others, the Smiths. Woosley, however, let the case go dormant for almost five (5) years. The trial court granted the Smith's motion to dismiss and for sanctions, finding that Woosley's motion to vacate the aforementioned decrees was groundless and brought in bad faith and for the purpose of harassment. Woosley also appealed that adverse decision. The Court of Appeals for the Fourth Court of Appeals District of Texas, San Antonio again ruled against Woosley on all points. It is noteworthy, especially in the context of this motion, that Woosley has *never* paid the sanctions ordered against him in the Texas tort action.

During the same timeframe, Woosley filed suit in the United States District Court for the Western District of Pennsylvania on December 31, 1996. On September 23, 1998, the district court dismissed Woosley's claims as time barred.

Thereafter, the United States Court of Appeals for the Third Circuit affirmed, without opinion, the district court's decision. *See Woosley v. Smith*, 194 F.3d 446 (3d Cir. 2000). Woosley then filed for a writ of certiorari with the United States Supreme Court. His application was denied on February 22, 2000.

Having exhausted all of the foregoing civil remedies available to him, Woosley then proceeded to take the law into his own hands. On or about July 6, 2000 Woosley drove from his home in Pennsylvania to Connecticut where he rented a car and drove to Fairfield, Connecticut. While the Smiths were at work, and Kyle was at home with his brother and a baby sitter, Woosley attempted to abduct Kyle by kidnapping Kyle from in front of his home. Kyle's brother who helped him escape from Woosley's rental car foiled the attempted abduction. Thereafter, neighbors contained Woosley until the police arrived and Woosley was arrested.

Woosley was charged with the following offenses: kidnapping in the second degree; two counts of reckless endangerment in the second degree; stalking in the third degree and custodial interference in the first degree. The criminal court issued a protective order barring Woosley from any contact with Kyle or the Smiths during the pendancy of the criminal action. Civil restraining orders were also issued to protect the Smiths collectively from Woosley.

In connection with the attempted abduction, on May 3, 2002, Woosley pled nolo contendre to the following charges: breach of peace in the second degree; two counts of reckless endangerment in the second degree; stalking in the third degree and custodial interference in the first degree. As a condition of his plea agreement, Woosley consented to the issuance of a Standing Criminal Restraining Order barring him from any contact whatsoever with Kyle. In addition, as a condition of his probation, Woosley agreed to have no contact whatsoever with the Plaintiffs.

Two weeks prior to entering the aforementioned plea agreement stemming from his attempted abduction of Kyle, Woosley filed a baseless and defective "Motion for Visitation Pendente Lite" in the Connecticut State Superior Court at Bridgeport. Woosley's maintenance of that action was a direct and intentional violation both of the Standing Criminal Restraining Order and the conditions of his probation. Woosley's claim for visitation was subsequently denied, and on January 1, 2003 the Smiths filed a Complaint in this Court requesting, among other things, a permanent injunction against further litigation of the issues surrounding the validity of Kyle's adopting decree or the decree terminating Woosley's parental rights.

On February 28, 2003, this Court issued a Permanent Injunction Order enjoining Woosley from litigating these issues in any forum without leave of the Court. Woosley then appealed the Injunction Order to the Second Circuit Court of Appeals, where the Court affirmed

6

the Order, with modification, on March 4, 2005. While Woosley was appealing to the Second Circuit, unbeknownst to the Smiths he filed a Habeas Corpus Petition Concerning Custody of a Child with the Connecticut Superior Court to obtain visitation rights with Kyle, in direct contravention of this Court's Injunction. Woosley's petition was apparently denied summarily, without opinion. However, on August 18, 2005, Defendant appealed the Connecticut Superior Court's denial of his Habeas Petition *in further contravention of this Courts permanent injunction*. Woosley did not provide the Smiths with notice of the habeas proceeding until ordered to do so by the Connecticut Appellate Court clerk. *See Lennon Decl. ¶ 5.*

In light of Woosley's two most recent Connecticut state court filings in direct breach of this Court's Permanent Injunction, he should be held in contempt of court and appropriate sanctions be issued against him for the reasons stated herein.

## ARGUMENT

### POINT I

### WOOSLEY IS GUILTY OF CONTEMPT BECAUSE HE HAS DELIBERATELY DEFIED THE CLEAR AND UNAMBIGUOUS <u>TERMS OF THIS COURT'S PERMANENT INJUNCTION</u>

**A.    The legal standard for contempt**

If a party violates an injunction entered by the district court, he will face the threat of both civil and criminal contempt. *Timken Roller Bearing Co. v. United States*, 341 U.S. 593, 604 (1951). A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) citing *King v. Allied Vision, Ltd.*, 65

7

F.3d 1051, 1058 (2d Cir. 1995). The Second Circuit has defined a "clear and unambiguous order" as one that leaves "no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1058 (2d Cir. 1995) (internal quotation marks omitted).

Furthermore, the moving party need not establish that the violation was willful. *Paramedics*, 65 F. 3d at 655. Here, as set forth above, Woosley made no attempt to comply with the terms of the Injunction and there can be no serious debate that his contempt was intentional and willful. The contemnor's disagreement with the district court's imposition of an injunction order is irrelevant to the contempt analysis. "Persons subject to an injunctive order issued by a court with jurisdiction are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order." *Paramedics*, 369 F.3d at 656, citing *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386 (1980). Complying with the instructions of the order is a matter "of respect for the judicial process." *Id.*

Woosley has a demonstrated history of disrespect for the judicial process. He violated this Court's Injunction twice in the last year. Although not a direct attack on the Injunction or the Texas Decrees, Mr. Woosley further demonstrated his disdain for the legal system when he filed a Complaint in this Court naming as defendants the Connecticut Superior Court and state prosecutors alleging violations of his Constitutional rights in relation to his criminal prosecution, etc. *See Lennon Decl. ¶ 6, Exhibit "4."*. His actions squarely meet the legal definition of contempt.

### B.  Woosley willfully violated the clear and unambiguous Injunction

The Injunction is clear and unambiguous. The Injunction Order states:

Paul David Woosley, his agents, servants and attorneys, and all persons in active concert of participation with them who receive actual notice of this order, are

8

> hereby restrained and enjoined from litigating, including in the action pending in the Connecticut Superior Court Judicial District of Fairfield at Bridgeport, docket no. FA 02-0392653(S), wherein Woosley is seeking an order of visitation with the minor son of David and Kimberly Smith, the questions of whether his parental rights were terminated by the decree of the 225th District Court of Bexar County, Texas dated July 15, 1992 in violation of his due process rights and whether the adoption decree of the 225th District Court of Bexar County, Texas dated March 1, 1993, should be set aside.

*Smith v. Woosley*, No. 3:03 CV 00143, slip op. at 4-5 (D.Conn. Feb. 28, 2003).

The Second Circuit Court of Appeals modified the order by finding that:

> [T]he statute of limitations ruling in Pennsylvania resolved a critical issue that, perhaps at the time and very likely now, leaves Woosley no longer entitled to contest the validity of the Texas decrees. To avoid having the Connecticut court's injunction inadvertently sweep too broadly, however, we will modify the injunction to permit Woosley to return to the Connecticut District Court and seek relief from the injunction in the event that he can (1) locate a jurisdiction in which a limitations period remains open (thereby, in accordance with Semtek, escaping the preclusive effect of the Pennsylvania District Court's judgment), (2) can obtain personal jurisdiction over the Smiths, and (3) is otherwise then entitled to challenge the Texas decrees.

*Smith v. Woosley*, 399 F.3d 428, 436 (2d Cir. 2005).

The plain meaning of the Permanent Injunction, as modified by the Second Circuit Court of Appeals, is unambiguous and clear. Woosley is prohibited from re-litigating the validity of the Smith's Texas adoption decree or the Texas decree terminating his parental rights without first seeking leave of this Court. As an able advocate well experienced with the legal system, Woosley should easily have understood the terms of the Injunction.

Any argument that Woosley's Habeas Petition for Custody of a Child or the subsequent appeal did not constitute prohibited relitigation of the issues covered by the Injunction would be specious because a decision granting Defendant's Habeas petition would *require* a finding that the Texas Decrees were invalid. Woosley's habeas petition and subsequent appeal were nothing more or less than his latest assaults on the Texas Decrees that he so mightily loathes. After more than 13 years of litigation, all of which has previously terminated against him, Woosley should

be given no quarter to wreak further abuse on the Smiths and the legal system at large. To do otherwise would be to give license to his creativity in conceptualizing new ways to relitigate previously resolved issues and claims.

### C.   Woosley made no effort to comply with the Injunction

Woosley made no attempt to comply with the Injunction as modified by the Second Circuit. Since this Court issued the Injunction approximately three years ago, Woosley has violated it at least twice by filing actions to contest issues explicitly prohibited by the Injunction. Woosley's persistence in using the legal system to litigate prohibited issues despite the existence of a permanent injunction makes it abundantly clear that he has made no effort to comply with the Injunction Order.

Thus, as Woosley's actions in violating the Injunction fulfill all three elements of civil contempt, Plaintiff's request for the issuance of an order of contempt and appropriate sanctions should be granted.

## POINT II

## CIVIL AND CRIMINAL CONTEMPT SANCTIONS SHOULD BE IMPOSED

### A.   Civil contempt sanctions are necessary and appropriate

As Woosley's violations of the terms of the Injunction clearly fit the definition of civil contempt, he is subject to sanctions. Civil contempt sanctions may have two purposes: first, to ensure that the contemnor complies with the permanent injunction in the future; and, second, to provide compensation to the party that has been wronged. *Paramedics*, 369 F.3d at 657. A court should look at several factors when considering the sanctions to be imposed for civil contempt:

> To the extent that a contempt sanction is coercive, the court has broad discretion to design a remedy that will bring about compliance. The district court is counseled to consider several factors in calculating a fine, including the character and magnitude of the harm threatened by continued contumacy, the probable

10

effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay.

*Paramedics*, 369 F.3d at 657 (internal citations omitted).

A district court may impose fines to achieve either purpose. At a minimum, Woosley should be ordered to pay the Smiths' legal fees incurred in responding to his violations of the Injunction. In addition, Woosley should be ordered to pay a sum per day for the continued maintenance of his Connecticut State Court appeal. As Judge Nevas held in *Egri v. Conn. Yankee Atomic Power Co.*, 2003 U.S. Dist. LEXIS 25600 (D. Ct. 2003):

> When imposing a coercive sanction, a court should consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). Similarly, while compensatory sanctions are appropriate to compensate a complainant for harm suffered due to contumacy, proof of pecuniary loss is not required to support a civil contempt fine. See *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 455-56, 76 L. Ed. 389, 52 S. Ct. 238, 1932 Dec. Comm'r Pat. 564 (1932).
>
> In addition, it is appropriate for the court to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful. See, e.g., *Manhattan Indus., Inc. v. Sweater Bee by Banff Ltd.*, 885 F.2d 1, 8 (2d Cir. 1989). Contempt is willful where the contemnor has actual notice of the court's order, was able to comply with it, did not seek to have it modified, and made no effort to comply. See *King v. Allied Vision Ltd.*, 919 F. Supp. 747, 753 (S.D.N.Y. 1996).

*Egri*, 2003 U.S. Dist. LEXIS 25600 at *12-*13.

In this case, in light of Woosley's blatant disregard for all legal convention and a specific order prohibiting him from re-litigating his challenges to the Texas Decrees, it is evident that Woosley will not be deterred from committing further violations of the Injunction unless appropriate sanctions are imposed.

### B. The Court should appoint a criminal prosecutor

As set forth above, Woosley has previously disregarded monetary sanctions imposed against him in the Texas litigation. Thus, it is highly doubtful that imposition of monetary sanctions alone will have a deterrent effect on Woosley. More importantly, Woosley's appeal to the Connecticut Appellate Court constitutes clear and convincing evidence of his flagrant disregard of the terms of the Injunction. Thus, Plaintiffs request that the Court commence a criminal prosecution of Woosley pursuant to Federal Rule of Criminal Procedure 42 for the purpose of imposing criminal sanctions against him to prevent him from further gross and willful violations of the Injunction.

Federal Rule of Criminal Procedure 42, which provides as follows:

(a) Disposition After Notice. Any person who commits criminal contempt may be punished for that contempt after prosecution on notice.

   (1) *Notice.* The court must give the person notice in open court, in an order to show cause, or in an arrest order. The notice must:

      (A) state the time and place of the trial;
      (B) allow the defendant a reasonable time to prepare a defense; and
      (C) state the essential facts constituting the charged criminal contempt and describe it as such.

   (2) *Appointing a Prosecutor.* The court must request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court must appoint another attorney to prosecute the contempt.

   (3) *Trial and Disposition.* A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as Rule 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

> (b) Summary Disposition. Notwithstanding any other provision of these rules, the court (other than a magistrate judge) may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies; a magistrate judge may summarily punish a person as provided in 28 U.S.C. § 636(e). The contempt order must recite the facts, be signed by the judge, and be filed with the clerk.

Fed. R. Crim. P. 42.

Criminal contempt is typically imposed "to punish the violation and vindicate the court's authority." *Universal City Studios, Inc. v. N.Y. Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir. 1983). In *Universal*, the district court imposed a 30-day sentence as a criminal contempt sanction for the defendant's past, willful violation of the injunction. On appeal, the Second Circuit stated that:

> Though the use of judicial power to secure future compliance with a court order involves civil contempt remedies, *Shillitani v. United States*, 384 U.S. 364, 368-70, 16 L. Ed. 2d 622, 86 S. Ct. 1531 (1966), the use of such power in the aftermath of past violations can take the form of either civil contempt remedies or criminal contempt punishments, or both, *Backo v. Local 281, United Brotherhood of Carpenters & Joiners of America*, 438 F.2d 176 (2d Cir.1970), *cert. denied*, 404 U.S. 858, 30 L. Ed. 2d 99, 92 S. Ct. 110 (1971). When an injunction has been violated, civil contempt remedies are available to provide compensation or other remedial relief for the party for whose benefit the injunction was entered, and criminal contempt penalties may be imposed, where appropriate, to punish the violation and vindicate the court's authority. n1
>
> n1 The contemnors mistakenly rely on *Shillitani v. United States, supra*, to assert that criminal contempt sanctions may not be imposed until there has been a determination that civil contempt remedies are ineffective. That rule applies when a court is endeavoring to secure future compliance with a court order, *id.* 384 U.S. at 371 n.9, not when a court is taking cognizance of past violations.

Woosley's 13-year track record of abusive, vexatious and harassing conduct toward the Smiths provides an ample background illuminating the need for this Court to impose a serious and substantial sanction for his latest disregard for the legal system. As Woosley has previously disregarded orders from other courts to pay sanctions and attorney's fees, the only effective sanction for his willful violation of this Court's Injunction is a period of incarceration. Thus, the

13

Smiths respectfully request that the Court appoint a prosecutor pursuant to Federal Rule of Criminal Procedure 42(a)(2).

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for an order holding Woosley in civil contempt and appointing a prosecutor pursuant to Federal Rule of Criminal Procedure 42(a)(2) should be granted.

> The Plaintiffs,
> DAVID and KIMBERLY SMITH
>
> By: _/s/ Patrick F. Lennon_
> Patrick F. Lennon (CT 11950)
> TISDALE & LENNON, LLC
> 10 Spruce Street
> Southport, CT 06490
> (203) 254-8474

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing Memorandum of Law has been sent via first class mail, postage prepaid 7th day of February 2006, to the following litigant of record:

Paul David Woosley
1 Rohr Drive
Doylestown, PA 18901-4439

_____
Patrick F. Lennon