# EXHIBIT 2

Source: My Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > 2nd Circuit - US Court of Appeals Cases
Terms: woosley (Edit Search | Suggest Terms for My Search)

✦Select for FOCUS™ or Delivery

e

*399 F.3d 428, \*; 2005 U.S. App. LEXIS 3641, \*\**

DAVID SMITH and KIMBERLY SMITH, Plaintiffs-Appellees, v. PAUL DAVID **WOOSLEY**, Defendant-Appellant.

Docket No. 03-9198

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

399 F.3d 428; 2005 U.S. App. LEXIS 3641

November 12, 2004, Argued
March 4, 2005, Decided

**SUBSEQUENT HISTORY:** As Amended, March 23, 2005.

**PRIOR HISTORY:** [\*\*1] Appeal from the March 4, 2003, injunction of the United States District Court for the District of Connecticut (Alvin W. Thompson, District Judge), issued pursuant to the "relitigation exception" of 28 U.S.C. § 2283, to protect the collateral estoppel effect of a judgment of a District Court for the Western District of Pennsylvania. The injunction bars the biological father of an adopted child from relitigating the questions of whether his parental rights were validly terminated by a Texas state court decree and whether the adoption decree of the Texas state court should be set aside. **Woosley** v. Adoption Alliance, 2001 Tex. App. LEXIS 4047 (Tex. App. San Antonio, June 20, 2001)

**DISPOSITION:** Affirmed, as modified.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant father appealed an order of the United States District Court for the District of Connecticut denying his motion to amend a permanent injunction, which barred him from relitigating the validity of Texas state court decrees that terminated his parental rights and permitted plaintiff applicants to adopt his child.

**OVERVIEW:** A Texas state court terminated the father's parental rights and permitted the applicants to adopt his child. The Pennsylvania district court dismissed, as time-barred, the father's action to set aside the Texas decrees. The Connecticut district court granted the applicants a permanent injunction prohibiting the father from litigating questions of whether his rights were validly terminated and whether the adoption decree should have been set aside. The father appealed the Connecticut court's denial of his motion to amend the injunction. The court held that the Connecticut court properly enjoined relitigation of the issues adjudicated by the Pennsylvania court because the father forfeited objection to the Connecticut court's authority under a relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283. The equities overwhelmingly favored an injunction when he had lost his challenges and attempted to kidnap the child. The court modified the injunction to permit the father to seek relief in Connecticut if he could escape the preclusive effect of the Pennsylvania judgment and locate a jurisdiction in which a limitations period remained open 11 years after the Texas decrees.

**OUTCOME:** The court affirmed the injunction order. The court modified the injunction to permit the father to seek relief from the injunction in the Connecticut district court if he could locate a jurisdiction in which a limitations period remained open, could obtain personal jurisdiction over the applicants, and was entitled to challenge the Texas decrees.

**CORE TERMS:** injunction, decree, relitigation, time-barred, parental rights, motion to amend, limitations period, preclusive effect, terminated, biological mother, purchaser, statute of limitations, registered, authorize, indirect, personal jurisdiction, visitation, permanent injunction, collateral estoppel, federal common law, notice of appeal, adoption decree, claim-preclusive, manufacturers, termination, preclusion, judicata, barring, issuing, viable

### LexisNexis(R) Headnotes ✦ Hide Headnotes

Civil Procedure > Appeals > Appellate Jurisdiction > Interlocutory Orders

*HN1* A denial of a motion to amend an injunction is subject to an interlocutory appeal. 28 U.S.C.S. § 1292(a)(1).  More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN2* See 28 U.S.C.S. § 2283.

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN3* The Anti-Injunction Act, 28 U.S.C.S. § 2283, applies to injunctions that prohibit a person from litigating in a state court, as well as injunctions that directly stay proceedings in a state court.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN4* The authority of a United States court to issue an injunction to protect its judgments from further litigation in state courts is known as the "relitigation exception" to the broad prohibition of the Anti-Injunction Act.  More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN5* The United States Supreme Court cautions against expanding the scope of the exceptions to 28 U.S.C.S. § 2283 by "loose statutory construction," but the United States Court of Appeals for the Second Circuit understands that the Supreme Court is concerned with unwarranted expansion of the types of cases in which § 2283 authorizes an injunction, rather than the identity of the court that may act.  More Like This Headnote

Civil Procedure > Venue

*HN6* The issue of which of two district courts may act in a given matter is usually a matter of venue, provided that the court whose authority is questioned has subject matter and personal jurisdiction.  More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Waiver & Preservation

Civil Procedure > Venue

*HN7* Venue objections are waived if not timely asserted. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN8* The Anti-Injunction Act, 28 U.S.C.S. § 2283, is a statute that regulates the equity power of a district court. More Like This Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN9* The relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283, authorizes an injunction to protect against relitigation of "claims or issues" that actually have been decided by the federal court. In other words, the relitigation exception permits a preemptive strike that avoids the need to assert prior adjudication defenses in a state court when faced with claims that have already been rejected in a federal court. By referring to both "claims" and "issues," the United States Supreme Court permits the relitigation exception to be applied to protect a federal court's judgment that would be entitled to more than the issue-preclusion effect of collateral estoppel. A judgment adjudicating a claim can also be protected. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Preclusion & Effect of Judgments

*HN10* A district court's dismissal of claims as time-barred is not necessarily the type of merits decision that has preclusive effect in subsequent litigation. All Fed. R. Civ. P. 41(b) means is that a federal court's dismissal with prejudice of a time-barred claim means that the claim may not be refiled in the court that dismissed the claim. Federal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity, and the content of such federal common law would be the law that would be applied by state courts in the state in which the federal diversity court sits. The traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN11* The relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283, permits protection against relitigation only of what a prior federal court has actually decided. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > State & Federal Interrelationships > Anti-Injunction Acts

*HN12* The relitigation exception to the Anti-Injunction Act, 28 U.S.C.S. § 2283, may apply even if the merits of the case were never reached, provided that a critical issue concerning the case has been adjudicated properly. More Like This Headnote

**COUNSEL:** Paul David **Woosley**, pro se, Doylestown, Penn., for Defendant-Appellant.

Patrick F. Lennon, Tisdale & Lennon, Southport, Conn., on the brief for Plaintiffs-Appellees.

**JUDGES:** Before: NEWMAN, McLAUGHLIN, and POOLER, Circuit Judges.

**OPINIONBY:** JON O. NEWMAN

**OPINION:**

[*429] JON O. NEWMAN, Circuit Judge.

This appeal primarily concerns the authority of a district court to issue an injunction under the "relitigation exception" to the Anti-Injunction Act, 28 U.S.C. § 2283, to protect the judgment of another district court. The issue arises [**2] on an appeal by Defendant-Appellant Paul David **Woosley** from an order of the District Court for the District of Connecticut (Alvin W. Thompson, District Judge), denying his motion to amend a permanent injunction. The injunction barred **Woosley** from relitigating the validity of two Texas state court decrees, issued in 1992 and 1993, that terminated his parental rights and permitted Plaintiffs-Appellees David and Kimberly Smith to adopt the child whom **Woosley** fathered. **Woosley's** previous efforts to challenge the Texas decrees had been rejected in a suit he brought in 1996 in the District Court for the Western District of Pennsylvania.

We conclude that the District Court in Connecticut properly enjoined relitigation of the issues adjudicated by the District Court in Pennsylvania. We therefore affirm, with a slight modification.

Background

**Woosley** is the biological father of Kyle Smith ("Kyle"), who was born in Pennsylvania on July 8, 1992, and then transported to Texas. Prior to the birth, the biological mother had proposed placing the child for adoption. Shortly after the birth, **Woosley** signed an Affidavit of Waiver of Interest in Child, n1 and the biological mother and her husband [**3] (who was not **Woosley**) executed [*430] an Affidavit of Relinquishment of Parental Rights. See **Woosley** v. Smith, 925 S.W.2d 84, 85-86 (Tex. App. San Antonio 1996) ("**Woosley**-Texas I"). On July 15, 1992, the 225th District Court, Bexar County, Texas, entered a decree terminating the parental rights of **Woosley** and the biological mother, and on July 22, 1992, entered a decree terminating the parent-child relationship between Kyle and the husband of his biological mother. See id. On March 1, 1993, the Bexar County court entered a decree of adoption making the Smiths the adoptive parents of Kyle. See id.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 According to an affidavit filed on **Woosley's** behalf in the subsequent Connecticut state court litigation in which he sought visitation rights, a parent who signs an Affidavit of Waiver of Interest in Child under the 1992 Texas procedure is not entitled to notice of any hearing that may affect the parent-child relationship.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

In July 1993, **Woosley** filed suit in the Bexar County court [**4] against the Smiths and their adoption agency, seeking to set aside that court's decrees. The court rejected his claims and upheld both decrees. See id. On April 10, 1996, that decision was upheld on **Woosley's** appeal to the Texas Court of Appeals. n2 See id. at 85. **Woosley's** subsequent appeal to the same court was rejected on grounds of res judicata and collateral estoppel, see **Woosley** v. Adoption Alliance ("**Woosley**-Texas II"), 2001 Tex. App. LEXIS 4047, No. 04-00-00343-CV, 2001 WL 687571 (Tex. App. San Antonio June 20, 2001), and the Supreme Court denied certiorari, see **Woosley** v. Adoption Alliance, 537 U.S. 878, 154 L. Ed. 2d 133, 123 S. Ct. 78 (2002). The Texas appellate court also upheld the imposition of sanctions against **Woosley**

for a frivolous pleading. See **Woosley**-Texas II, 2001 Tex. App. LEXIS 4047, 2001 WL 687571, at *1.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 **Woosley's** appeal contended that the ruling of the Bexar County court that terminated his parental rights (and those of the biological mother) was void because it was superseded by the subsequent ruling that terminated the parental rights of the mother's husband. The appellate court rejected the claim, holding that the initial termination ruling of the county court had merged into the later termination ruling. See **Woosley**-Texas I, 925 S.W.2d at 87.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**5]

In December 1996, **Woosley** filed suit in the District Court for the Western District of Pennsylvania, seeking a declaration that his parental rights had not been validly terminated and an order setting aside the adoption decree entered by the Texas court. He alleged fraud and violation of his federally protected civil rights. n3 In an unreported decision dated September 23, 1998, the Pennsylvania District Court dismissed the suit as time-barred ("**Woosley**-Pennsylvania"), ruling that the limitations period for both claims was two years. See 42 Pa. C.S.A. § 5524(7); Urrutia v. Harrisburg County Police Department, 91 F.3d 451, 457 n. 9 (3d Cir. 1996). The Third Circuit affirmed, **Woosley** v. Smith, 191 F.3d 446 (3d Cir. 1999) (table), and the Supreme Court denied a petition for a writ of certiorari, **Woosley** v. Smith, 528 U.S. 1159, 145 L. Ed. 2d 1079, 120 S. Ct. 1169 (2000).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 **Woosley's** allegations are set forth in the Smith's appellate brief to the Third Circuit. See Brief of Appellees, **Woosley** v. Smith, 191 F.3d 446 (3d Cir. 1999)(table)(1999 WL 33653330).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**6]

In July 2000, **Woosley** attempted to kidnap Kyle, then age 7, by placing him into a car in front of the Smiths' home. The attempt was foiled by Kyle's nine-year-old brother who opened the rear door of the car to free him. A baby-sitter called the police. In May 2002, pursuant to a plea agreement, **Woosley** was convicted in the Connecticut Superior Court of various offenses, including custodial interference in the first degree. As a condition of his plea agreement, **Woosley** is precluded from having any contact with Kyle.

Two weeks prior to his conviction, **Woosley** filed a suit in the Connecticut Superior Court, seeking visitation rights and apparently contending that the Texas decrees were void. The Superior Court dismissed the suit, ruling that **Woosley's** parental [*431] rights had been terminated by the Texas court and that a requirement for visitation rights is a "parent-like relationship." **Woosley** v. Smith, 2003 Conn. Super. LEXIS 676, FA020392653(S), 2003 WL 1490317, at *2 (Conn. Super. Ct. Mar. 3, 2003).

In January 2003, the Smiths filed the pending suit in the Connecticut District Court, seeking damages for vexatious litigation and intentional infliction of emotional distress, and an injunction [**7] barring **Woosley** from further attempts to challenge the Texas decrees. In February 2003, the District Court granted a permanent injunction prohibiting **Woosley** from litigating the questions of whether his parental rights were validly terminated by the Texas court and whether the adoption decree should be set aside. The District Court acted on the

basis of the "relitigation exception" to 28 U.S.C. § 2283, ruling that an injunction was "necessary and appropriate to protect the collateral estoppel effect of the judgment" of the Pennsylvania District Court. The injunction was entered March 4, 2003. On March 14, 2003, **Woosley** filed a motion to amend the injunction. The motion was denied by an order entered September 29, 2003. On October 28, 2003, **Woosley** filed a notice of appeal, identifying the September 29 denial of the motion to amend as the subject of the appeal.

Discussion

At the outset, we consider our appellate jurisdiction. This is an interlocutory appeal, as the Smiths' damage claims remain pending in the District Court. **Woosley's** notice of appeal identifies the order denying his motion to amend the permanent injunction as the subject of the appeal, and [**8] *HN1* a denial of a motion to amend an injunction is subject to an interlocutory appeal, see 28 U.S.C. § 1292(a)(1). However, it is apparent from **Woosley's** papers that he is also challenging the injunction itself. We will construe the pro se notice of appeal as comprehending a challenge to the injunction, in view of the fact that had **Woosley** filed a timely notice of appeal from the injunction, his motion to amend, filed within ten days of entry of the injunction, would have postponed the effectiveness of such a notice until the motion to amend was denied on September 29, 2003, see Fed. R. App. P. 4(a)(4)(A)(iv), and his timely notice of appeal was filed within 30 days of that date.

1. Authority of the Connecticut District Court

The principal issue is whether the Connecticut District Court may enjoin **Woosley** in order to protect the judgment of the Pennsylvania District Court. The Anti-Injunction Act provides:

> *HN2* A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
> [**9]

28 U.S.C. § 2283. It is well settled that *HN3* the Act applies to injunctions that prohibit a person from litigating in a state court, as well as injunctions that directly stay proceedings in a state court. See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 26 L. Ed. 2d 234, 90 S. Ct. 1739 (1970); Ungar v. Mandell, 471 F.2d 1163, 1165 (2d Cir. 1972).

*HN4* The authority of a United States court to issue an injunction "to protect . . . its judgments" from further litigation in state courts is known as the "relitigation exception" to the broad prohibition of the Anti-Injunction Act. See Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147, 100 L. Ed. 2d 127, 108 S. Ct. 1684 (1988); Note, Federal Power to Enjoin State Court Proceedings, [*432] 74 Harv. L. Rev. 726, 732 (1961). This exception was enacted in 1948 in response to the Supreme Court's decision in Toucey v. New York Life Insurance Co., 314 U.S. 118, 86 L. Ed. 100, 62 S. Ct. 139 (1941), which had limited to in rem actions the previously exercised authority of federal courts to prevent relitigation in state courts of matters [**10] adjudicated in a federal court, see, e.g., Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 83 L. Ed. 285, 59 S. Ct. 275 (1939). n4 Congress evidently was persuaded that federal courts should be authorized to protect their judgments against relitigation in state courts, rather than leave successful federal court litigants to the

assertion of collateral estoppel defenses in subsequent state court actions. If such defenses were unjustifiably rejected, the only federal recourse (in non-removable suits) would be the uncertain prospect of certiorari review by the United States Supreme Court.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 The Reviser's Note to section 2283 states:

> The revised section restores the basic law as generally understood and interpreted prior to the Toucey decision.



28 U.S.C. § 2283, Reviser's Note (2000).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

The text of the relitigation exception suggests that a federal court may protect only a judgment that the court issuing the injunction has previously entered. **[**11]** The referent of "its" in the phrase "protect . . . its judgments" is naturally read to mean the same court that is authorized to issue an injunction. Moreover, if a federal court may protect another federal court's judgment, then section 2283's reference to "[a] court of the United States" would mean both the court issuing the injunction and the different court whose judgment is being protected. Although the latter reading is a somewhat strained way to parse the statute, it is not contrary to any explicit command that Congress has given.

Two courts have considered the issue of whether section 2283 permits a federal court to protect the judgment of another federal court and have come to opposite conclusions, although neither decision is a definitive holding. n5 In Meridian Investing & Development Corp. v. Suncoast Highland Corp., 628 F.2d 370 (5th Cir. Unit B 1980), a creditor obtained a default judgment against its debtor in the District Court for the Southern District of New York. See id. at 371. The creditor then registered the judgment in the Middle District of Florida, pursuant to 28 U.S.C. § 1963. After the debtor **[**12]** obtained an injunction against the creditor from a Florida state court, the creditor sought a federal court injunction against the debtor in the Middle District of Florida. The Fifth Circuit reversed the District Court's denial of an injunction, ruling that the creditor was entitled under section 2283 to prevent the debtor "from relitigating the validity of the New York federal court judgment in Florida state court." Meridian, 628 F.2d at 373. Although the Fifth Circuit's opinion appears to approve of the Florida Middle District's authority to protect the judgment of the District Court in the Southern District of New York, the injunction could be viewed as protecting the judgment registered in the District Court in the Middle District of Florida. The registration statute provides that "[a] judgment so registered shall have the same effect as a judgment of the district court of the district **[*433]** where registered and may be enforced in like manner." 28 U.S.C. § 1963.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 In addition, the Fifth Circuit has affirmed a district court's injunction against state court litigation, issued to protect a judgment issued by a bankruptcy court. See Regions Bank of Louisiana v. Rivet, 224 F.3d 483, 488-92 (5th Cir. 2000). The bankruptcy court appears to be within the district of the district court that issued the injunction, although the opinion does

not make this point explicit, nor rely on it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**13]

In Alton Box Board Co. v. Esprit de Corp., 682 F.2d 1267 (9th Cir. 1982), a judgment of the District Court for the Southern District of Texas dismissed federal antitrust claims by a class of purchasers of corrugated containers against a group of manufacturers. See id. at 1269 n. 1. An indirect purchaser, which had been excluded from the class, brought a suit against the manufacturers in a California state court, alleging violations of state antitrust law. See id. at 1269. The manufacturers filed an action in the District Court for the Northern District of California, seeking an injunction to prohibit the indirect purchaser from pursuing its state court action. See id. at 1269-70. The District Court denied the injunction. See id. at 1270. The Ninth Circuit affirmed the denial of the injunction, ruling first that, since the indirect purchaser was not a member of the class in the antitrust suit in the Texas federal court, the indirect purchaser's state court suit "does not interfere with the judgment entered" by the Texas federal court. Id. at 1273. In addition, the Ninth [**14] Circuit stated that section 2283 did not authorize the California federal court to protect the judgment of the Texas federal court. See id. This latter aspect of the Ninth Circuit's opinion is at most an alternate holding and perhaps only dictum.

We thus confront a close question. The statutory language can be read to mean that a court can protect only its own judgment, n6 and the case law is inconclusive. However, the purpose of the relitigation exception--precluding relitigation in state courts of issues determined by a federal court--appears to be better served by allowing a district court that has subject matter and personal jurisdiction to issue an injunction that protects the judgment of another federal court than by forcing the litigants to a likely inconvenient forum for an identical result. In this case, the Connecticut federal court had subject matter jurisdiction founded on diversity of citizenship and personal jurisdiction over **Woosley.**

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n6 We are mindful that HN5 the Supreme Court has cautioned against expanding the scope of the exceptions to section 2283 by "loose statutory construction," see Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 287, 26 L. Ed. 2d 234, 90 S. Ct. 1739 (1970), but we understand the Court to be concerned with unwarranted expansion of the types of cases in which section 2283 authorizes an injunction, rather than the identity of the court that may act.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**15]

Fortunately, we need not rule definitively on the matter because two other factors weigh heavily in favor of affirming the injunction, albeit with a slight modification. First, even if the relitigation exception were read to authorize only the district court issuing a judgment to protect it, that limitation seems more akin to a venue limitation than to a limit on subject matter jurisdiction, at least the fundamental heads of subject matter jurisdiction like federal question and diversity jurisdiction. HN6 The issue of which of two district courts may act in a given matter is usually a matter of venue, provided that, as in this case, the court whose authority is questioned has subject matter and personal jurisdiction. This is not a situation where Congress has explicitly named a particular district court as the only one authorized to act with respect to a particular matter. See, e.g., Bipartisan Campaign Reform Act of 2002, § 403(a)(1), 107 Pub. L. 155, 116 Stat. 81, 113. To the extent that the determination of the appropriate district court to issue a protective injunction is akin to an issue of venue, **Woosley** has forfeited any objection to the authority of the Connecticut District [**16]

Court by failing to [*434] object to that Court's authority, either in the District Court or in his brief on appeal. n7 <sup>HN7</sup>Venue objections are waived if not timely asserted. See Tri-State Employment Services, Inc. v. Mountbatten Surety Co., 295 F.3d 256, 261 n. 2 (2d Cir. 2002); Concession Consultants, Inc. v. Mirisch, 355 F.2d 369, 371 & n. 1 (2d Cir. 1966).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

N7 The issue of whether the Connecticut District Court had authority to protect the judgment of the Pennsylvania District Court was raised by this Court prior to oral argument. We received supplemental papers from the parties concerning the issue.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Second, <sup>HN8</sup>section 2283 is a statute that regulates the equity power of a district court, and in the pending case, the equities overwhelmingly favor the issuance of an injunction to bar further relitigation of the Texas court decrees. **Woosley** has lost all of his Texas state court appeals of the adoption and termination-of-parent-rights decrees, has lost the challenge to the adoption decree [**17] that he brought in the Pennsylvania District Court, has lost his appeal of that federal court judgment, has lost the Connecticut state court challenge to the validity of the adoption and termination decrees that he brought in the course of seeking visitation rights, and has been convicted of custodial interference after attempting to kidnap the Smiths' lawfully adopted child. The Smiths are clearly entitled to an injunction.

2. Protection of the Pennsylvania Judgment

The remaining issue is whether the Pennsylvania District Court judgment is entitled to protection. <sup>HN9</sup>The relitigation exception authorizes an injunction to protect against relitigation of "claims or issues" that "actually have been decided by the federal court." Choo, 486 U.S. at 148 n8; Staffer v. Bouchard Transportation Co., 878 F.2d 638, 642 (2d Cir. 1989). In other words, the relitigation exception permits a preemptive strike that avoids the need to assert prior adjudication defenses in a state court when faced with claims that have already been rejected in a federal court. **Woosley** contends that the Pennsylvania District Court did not adjudicate the merits of his challenges to the [**18] validity of the Texas decrees because the District Court dismissed his challenges as time-barred without explicitly ruling that the Texas decrees were valid.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 By referring to both "claims" and "issues," we understand the Supreme Court to have permitted the relitigation exception to be applied to protect a federal court's judgment that would be entitled to more than the issue-preclusion effect of collateral estoppel. A judgment adjudicating a claim could also be protected. But by insisting that the "claims or issues . . . actually have been decided," Choo, 486 U.S. at 148, the Court was not permitting protection of the full res judicata effect of a judgment, i.e., preclusion of claims that, while not litigated, arose from the same common nucleus of operative facts as the litigated claim.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Connecticut District Court rejected **Woosley's** argument, ruling that a dismissal of claims as time-barred is a ruling on the merits, unless the judgment memorializing the dismissal recites that [**19] the dismissal is without prejudice. The Court relied on our

decision in PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 (2d Cir. 1983), and Fed. R. Civ. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies, a dismissal under [the involuntary dismissal provision of Rule 41] . . . operates as an adjudication upon the merits."). However, the Supreme Court's subsequent decision in Semtek International Inc. v. Lockheed Martin Corp., 531 U.S. 497, 149 L. Ed. 2d 32, 121 S. Ct. 1021 (2001), makes clear that HN10 a district court's dismissal of claims as time-barred is not necessarily [*435] the type of merits decision that has preclusive effect in subsequent litigation.

In Semtek, a plaintiff's claims for breach of contract and various business torts, brought to a federal court on the basis of diversity of citizenship, were dismissed by the District Court for the Central District of California as barred by California's two-year statute of limitations. See id. at 499. The plaintiff then brought the same claims in a Maryland state court, since the claims were still timely under Maryland's three-year statute of limitations. See [**20] id. Despite the longer local limitations period, the Maryland court dismissed on the ground of res judicata. See id. at 500. The Maryland Court of Special Appeals affirmed, ruling that whether or not a California state court would have accorded claim-preclusive effect to a limitations dismissal by one of its own courts, federal law obliged the Maryland court to give preclusive effect to the dismissal by the California federal court. See id. at 500.

The Supreme Court reversed and remanded. See id. at 509. Justice Scalia first rejected the idea that Rule 41(b) necessarily gives preclusive effect to every district judgment that dismisses a claim as time-barred and does not state that the dismissal is without prejudice. All Rule 41(b) means, he explained, is that a federal court's dismissal with prejudice of a time-barred claim means that the claim may not be refiled in the court that dismissed the claim. See id. at 506. Then, looking for a source of law to determine the preclusive effect of the federal court's dismissal, he ruled that "federal common law governs the claim-preclusive [**21] effect of a dismissal by a federal court sitting in diversity," id. at 508, and that the content of such federal common law would be "the law that would be applied by state courts in the State in which the federal diversity court sits," id. Justice Scalia also pointed out that "the traditional rule is that expiration of the applicable statute of limitations merely bars the remedy and does not extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive effect in other jurisdictions with longer, unexpired limitations periods." Id. at 504. Without determining the content of California's preclusion law, the Court remanded to the Maryland appellate court so that it could determine whether California's preclusion law, adopted as federal common law, completely barred the plaintiff's claims or left them viable under Maryland's three-year limitations period. See id. at 509.

Semtek's explication of how the preclusive effect of a diversity court's dismissal of claims as time-barred is to be determined, together with Choo's admonition that HN11 the relitigation exception permits protection against [**22] relitigation only of what a prior federal court has actually decided, guide our decision as to the extent of protection [*436] the Connecticut District Court was entitled to give to the Pennsylvania District Court's judgment. **Woosley** claimed in the Pennsylvania Court that the Texas decrees were invalid, and the Pennsylvania Court rejected his challenge on the ground that his claims were barred by the statute of limitations. We have located no Pennsylvania state court decision determining whether Pennsylvania state courts deem a limitations dismissal as barring only the remedy or barring the pursuit of the claim even in jurisdictions with longer limitations periods. Unlike the circumstances in Semtek, however, the Pennsylvania District Court's judgment bars further litigation to challenge the Texas decrees no matter which approach to time-barred dismissals is taken by Pennsylvania state courts. The reason is that when the Connecticut District Court entered its injunction, nearly eleven years had passed since the entry of the Bexar County court's decrees and seven years had passed since the decision of the Texas Court of Appeals ruling that the decrees could not be set aside. **Woosley** [**23] has made no claim that his challenges to the Texas decrees remain viable within the limitations period of any jurisdiction, and we are aware of none in which they could now be brought. At most,

Search & Results - Woosley　　Case 3:03-cv-00143-AWT　Document 32-3　Filed 02/09/2006　Page 12 of 12　Page 11 of 11

the Pennsylvania judgment left **Woosley** free to challenge the Texas decrees only in a jurisdiction with relevant limitations periods longer than those of Pennsylvania. But since no jurisdiction of which we are aware has a limitations period of such length as to leave **Woosley's** challenges to the Texas decrees now viable, the likely effect of the Pennsylvania judgment is now to bar **Woosley** from challenging those decrees in any court. As the Eighth Circuit has noted, $^{HN12}$ "The relitigation exception may apply even if the merits of the case were never reached, provided that a critical issue concerning the case has been adjudicated properly." Canady v. Allstate Insurance Co., 282 F.3d 1005, 1015 (8th Cir. 2002). The statute of limitations ruling in Pennsylvania resolved a critical issue that, perhaps at the time and very likely now, leaves **Woosley** no longer entitled to contest the validity of the Texas decrees. To avoid having the Connecticut court's injunction inadvertently sweep too [**24] broadly, however, we will modify the injunction to permit **Woosley** to return to the Connecticut District Court and seek relief from the injunction in the event that he can (1) locate a jurisdiction in which a limitations period remains open (thereby, in accordance with Semtek, escaping the preclusive effect of the Pennsylvania District Court's judgment), (2) can obtain personal jurisdiction over the Smiths, and (3) is otherwise then entitled to challenge the Texas decrees.

Conclusion

The injunction order of the District Court, as modified, is affirmed.

Source: My Sources > Federal Legal - U.S. > Circuit Court Cases - By Circuit > 2nd Circuit - US Court of Appeals Cases
Terms: woosley (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Tuesday, February 7, 2006 - 6:19 PM EST

* Signal Legend:
- ● - Warning: Negative treatment is indicated
- Ⓠ - Questioned: Validity questioned by citing refs
- ⚠ - Caution: Possible negative treatment
- ◆ - Positive treatment is indicated
- Ⓐ - Citing Refs. With Analysis Available
- ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

https://www.lexis.com/research/retrieve?_m=95eb45156f9f1a00d1359342943c2919&docnum...　2/7/06